Good morning everyone. Judge Lynn and I would like to welcome again and thank Judge Bantz for sitting with us from the Eastern District of Louisiana. Thank you Judge Bantz. Thank you. The first case is submitted on the breach of United States v. Kerr. The first case on calendar for argument is Anderson v. Ducart. Good morning Your Honor. I would also like to pay my honor to be an avid Mr. Eric Anderson. Eric Anderson and a co-defendant, Randy Salazar, were on trial for a murder. During this trial, the prosecutor explained to the co-defendant's girlfriend that she refused to testify, even though the court held her in contempt. The prosecutor persuaded the court to allow her to put the witness, a young woman from Toronto, on the stand in front of the jury to show that she wouldn't ask questions. Except that wasn't all she did when she put the witness on the stand. Before the witness was in front of the jury, there was an examination of the witness, and the prosecutor asked her, Do you know Randy Salazar? He's just been on a blank night in a hotel with him. But when she put the witness on the stand, the prosecutor didn't even ask if she knew Randy Salazar. He said, Mr. Serrano, isn't it true that in late September or early October, Randy Salazar told you that he and Eric Anderson were out looking for a car to jack for a bomb, and they saw a guy who didn't look like he'd fight back, and he looked kind of dorky, and Eric Anderson got out of the car with a gun, and he wrestled with the guy, and he ended up shooting him as he stood by the side of the car. Counsel, would that have been an improper question, if it were answered? Yes, it involved improper hearsay. As it relates to Eric Anderson, yes, it was in effect six leading questions combined into one very inflammatory one. If she had answered the question, would it have been hearsay? It would have been hearsay because it related to what he told her. Yes, but that's not a testimonial. Well, it is testimony because everything that's in that question was extracted from Yami Serrano in an interview with the Onondaga Police Department. They asked her all those questions. That's the only place they got that information, was in a police interview. But the question itself didn't call for, asked her whether a non-testimonial statement was made to her, right? The Supreme Court tells us that six members directed toward ex parte examination. So my question was, was she asked about a non-testimonial statement that was made to her? She was asked a question that was obtained when finding testimonial that means that also included a hearsay statement by Randy Zalabak Salazar implicating the defendant in that part to her. It was not a testimonial. It was not a testimonial. It was because it was extracted by the police from Yami Serrano when they questioned her at the police department. Well, my question to you is, how is it a clearly unreasonable application of Supreme Court law? The Supreme Court has never held that a prosecutor is leaving questions to a witness about non-testimonial hearsay. It's a confrontation. Well, I dispute that it's not a testimony. When you extract evidence from a witness, ex parte, it doesn't become non-testimonial because part of it was hearsay. That's simply another reason that it is a problem. Well, the Ninth Circuit, United States v. Syme, had a situation where the prosecutor asked leaving questions about a judicial opinion, which was hearsay, and the Ninth Circuit said that a lot of questions, clearly wrong, it was clearly prosecutorial misconduct, but the judicial opinion was non-testimonial, and therefore it was not a confrontation problem. So I don't understand. I mean, I understand your argument, but I'm trying to understand how it would be a clearly unreasonable application of Supreme Court law to conclude that this was not a confrontation clause problem. Well, simply because the Crawford v. Washington tells us that our confrontation clause was directed to the use of ex parte examinations as evidence in court, and all that, every hundred percent of that question was the result of an ex parte examination in a statistical court with the mouthful of the prosecutor, just as if she were wearing a wig and wearing a robe and speaking in a 17th century British accent. Okay, well, assuming all that's true, then, it's a confrontation clause problem is not categorically and procurable with instructions. You're a great guy, right? I hear everything, except that Bruton v. United States says in some context you can get a true answer to a question and it won't appear in the error, but not in the context. And in Bruton, which is exactly the same context here, was the powerfully incriminating extrajudicial statements of a co-defendant, which stands accused side-by-side with the defendant, were deliberately spread before the jury in a joint trial. And that's just what I said. But what harm did it cause in light of the opinion of the jury? I would say overwhelming evidence of guilt in this case. But it wasn't overwhelming in the first trial, because the jury didn't convict. Second, every one of the witnesses that testified that the defense made incriminating statements to them, all of them had been accused of the police, threatened by the police, to be charged with the murder. But there was also identification testimony by a non-involved witness. There was some DNA on the clothes. There was some identification of Anderson that's driving the vehicle on a video. There's more than just those other confessions that corroborated his involvement in the murder. Apparently the I.O.S. showed him six types of photos, including Eric Anderson. He thinks somebody else is a potentially person involved. He didn't know Eric Anderson. So that same photo was published in the local newspaper. But he later testified, and the jury accepted that. He was confident that he identified the right people. Well, we don't know how much the jury accepted of that testimony. The jury did well and accepted the testimony of the prosecutor. Yeah, but you're putting a lot of stock in the fact that it was our jury the first time. The composition of the jury makes a lot of difference as to how strong is the evidence. Because the composition of the jury can change. The evidence has to be. But Nyserkin's law, as you said in a reply piece, that's pretty strong evidence in terms of close evidence. Nyserkin's also said that you can't read too much into a jury. Well, they've said two things. They say that in that particular case you're talking about the testimony is quite different. There's 47 pages in one address of testimony in one trial, and only 13 pages in the other. I think we've got to look at the evidence in total. The fact that there was an eyewitness identifying him with 98 percent certainty. So you can parse the pieces of evidence and say, well, this witness is problematic in some other ways, but then you couple them with the DNA evidence and the video footage. The DNA evidence. Well, sure, sure. You can parse each piece of evidence, but I think we've got to look at it in total to determine the harmlessness in the jury. I'm running low on time. Let me say one other thing. The trial was unfair because in the, as the appellate court assistant said, the prosecutor introduced evidence. Naomi Shimano had said she had a conversation with Randy Salazar for their hearing. She said, I didn't have a conversation. The jury didn't hear that. And for their examination, she said, I lied because I was scared. The jury didn't hear that. It was a non-adversarial trial on those issues. Counsel, if we disagree with you regarding the hysteria feature, other statements did you lose? No, because it was an unfair trial because it was not an adversarial trial. The prosecutor was able to introduce evidence of the statement,  Was that argument made to the state in a state habeas petition? I don't recall making the due process argument. It's a due process argument. I'm not saying that per se it's an unfair trial. And both due process and confrontation issues were raised in the state court. All right. Thank you, counsel. Good morning. May it please the Court. Jill Thayer to the board. I think the two parties see this piece in somewhat coming at it from somewhat different perspectives. I'll start with the confrontation issue. And, first of all, it's not in the Certificate of Appealability. And, also, I think there's no question that this was a non-testimonial statement. It was just Mr. Salazar talking to his girlfriend. It's no police activity. And there's no U.S. Supreme Court law. There's no case law that I know of that says that because it was discovered through an interrogation, that that could somehow render a non-testimonial statement into a testimonial statement. It would be a different situation if the prosecutor asked Ms. Zorla about her conversational place. Certainly, but here the prosecutor only asked about her conversation with Mr. Zorla. He was clearly suggesting that someone had told him that she said that and was suggesting to the jury that, as a fact, she told someone that. And the defense did not get to cross-examine her on whether she, in fact, told anybody that. That's correct. Yes, that's correct. And her statement to the police was desperate. Yes, her statement to the police was, but not Mr. Zorla didn't declare, and in this case it's Mr. Salazar and his conversation with Ms. Zorla was not. So the problem in this case, the way I see it, that I want to help you out, is that it's the leading questions and perhaps the first few which came in without objection. And as it was pointed out, certainly if she had suddenly changed her mind on the stand and decided to discuss her conversation, then that would have been admissible. And, well, certainly then there would have been a confrontation. But as should be counseled, just so we're on the same page, please certify the following question. Whether the prosecutor committed misconduct by improperly presenting false testimony obtained through coercion, by improperly questioning witnesses who refused to testify, or by relying on the improper questions in closing argument. So is your argument regarding Crawford in the context of whether the prosecutor committed misconduct? If the prosecutor violated Crawford, would that be misconduct? Well, the issue is whether she committed misconduct or whether she deprived Mr. Anderson of a fair trial. So that's the question. The only reason I really went into the Crawford issue is because Mr. Anderson went into it in such detail. But my question was, if there were Crawford here, would that be misconduct? It could be, certainly. Yes, if a prosecutor is asking about just holding a hearsay. The appropriate tutorial of his conduct has to be, to raise a habeas claim, it's got to violate constitutional rights. So it's got to be a due process violation of some kind. And due process includes confronting the right to confrontation. So I don't see how the confrontation clause issue is not, for us, our virtue of certification was clearly raised below. It was raised in the state courts. I think that the argument that all that was asked to be raised was prosecutorial misconduct. And since it's due process violation, you're just bad conduct and not the confrontation clause issue is wrong. Okay, I see that they're intertwined. That's what the argument is. So there was confrontation. The question is counted in terms of presenting false testimony of statehood or corruption. That's not a Crawford issue. That was actually a completely separate claim. It was not addressed in the opening brief, and so I didn't address it in my brief, and it wasn't addressed in the reply either. That claim was the first claim, and it had to do with Michael Johnson. The Michael Johnson submitted a declaration and said the prosecutor put out all this false testimony, so on and so forth. And then the district court discussed that in its ruling. So that's in the ER under, I think, the very first part of the district court's ruling. And then they asked a different question, religiously clarifying the state's position. Do you see misconduct here, and if so, where is the prosecutorial misconduct on this record? Is it with regards to the confrontation clause, the closing argument, the coercive testimony? Where is the misconduct on this record according to the state? Well, when this piece, this case was before this court, on the atheist corpus of this case, this court's decision is based on the state court's decision. So at this point, the procedure is I'm not defending what the prosecutor did. I'm defending a state court's ruling. The state court said there were improper questions, and so Van was conceded, I conceded there were a lot. So then the issue is, given the state court's ruling, and then the state court also said, but because of the instructions, because of, I mean, multiple instructions, because of the evidence, because of the cumulative nature of the testimony, and so on and so forth, it was not, well, it didn't deprive them of a fair trial. And so that is the issue before this court, is was that objectively unreasonable? So there's just many layers, but right now, for here, that's what this court needs to decide, and that's where, that's the position I'm arguing. So you're arguing that if it was validly cured, that the misconduct was cured by the instructions, is that what you're arguing? Well, in addition to other things, that it didn't deprive them of a fair trial, and for a number of reasons, including the multiple instructions. And so therefore, the Bruton issue, and I do see how those kind of can combine, but in Bruton and Dublin and all these various, those pieces that talk about when you're tying co-defendants together, you're spreading the evidence before the jury, and you're saying you can consider this confession from this guy, but not the other person. This is admissible evidence, and you need to decide whether his confession was true, but don't consider it at all for the other guy. Well, Bruton says, no, you can't do that. The jury can't actually do it. But in this case, the jury was instructed multiple times, don't consider this evidence, the questions of the jury are not evidence. And that was kind of a recurring theme throughout the trial, and I think it was very clear that it was not evidence they were to consider, and the defense, I think, both attorneys did a good job saying, no, you're not supposed to look at this. So the instructions were a big part of it, but then also the strength of the evidence, because like in Douglas, there was basically no other evidence, but here there was eyewitness testimony, DNA testimony, and this court can consider the cumulative nature of all of the evidence to find no error in the state court ruling. I'm prepared to submit. All right. Thank you, counsel. Reba. Counsel suggested that if the prosecutor asked the question in a different way, it might have been a violation. I submit to you that our three important questions don't change the fact that Yami Somalo's statement to the police was testimonial. It does not become untestimonial because it contains a conversation with her boyfriend. Whereas in this conduct, no reasonable prosecutor would think that answering that question was proper. I was a prosecutor many years ago. The judge probably called my supervisor and discussed my conduct in his courtroom. But prosecutors today take a calculated risk. An appellate court will see if their conviction, and sometimes it works, as it did in this case. The Constitution is all we have. That can't be the court's enforcement provisions. We ask you to reverse the conviction and reverse the petition and remand it with directions to grant the written. Thank you. Thank you to both counsel and case. This argument is submitted for decision by the court.
judges: Rawlinson, Nguyen, Vance